O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN E. CONGELLIE,<br><br>                Plaintiff,<br><br>    vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>                Defendant. | CASE NO. ED CV 12-02103 RZ<br><br>MEMORANDUM OPINION<br>AND ORDER |

        The Administrative Law Judge determined that Plaintiff Kathryn Elaine Congielliere suffered from a severe physical impairment, but not a mental one, and that she was disabled for a discrete period of time due to her physical impairment.  Plaintiff argues that the Administrative Law Judge wrongly disregarded the opinion of the physician who treated her mental impairment, and wrongly concluded that Plaintiff's mental impairment was not severe.  These two arguments are intertwined.

        The regulations do not define a "severe" impairment.  Instead, they state what a *non*-severe impairment is:  one that does not significantly limit physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  The basic work activities are "the abilities and aptitudes necessary to do most jobs," including various physical and mental activities.  *Id.*  The requirement of having a severe impairment performs a gatekeeping function, screening out frivolous complaints.  *Bowen v. Yuckert*, 482 U.S. 137,

153 (1987). In its internal procedures, the Social Security Administration assesses an impairment as "non-severe" if it has no more than a minimal effect on the individual's ability to do basic work functions. SSR 85-28. This minimalist treatment has received the Courts' imprimatur. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Thus, the requirement that a claimant have a severe impairment has been transmogrified into a requirement that the claimant have an impairment that is not very severe at all — it simply must have more than a minimal effect on his or her ability to do basic work functions. When the Commissioner rests his decision on the failure to satisfy the severity requirement, that decision, as with any other, must rest on substantial evidence within the record. *Smolen v. Chater, supra,* 80 F.3d at 1289-90.

The Administrative Law Judge proceeded through the so-called B criteria found in the regulations governing the Listing of Impairments, and the similar statements found in 20 C.F.R. § 404.1520a. [AR 16] He found only mild limitations in the first three categories — activities of daily living, social functioning, and concentration, persistence and pace — and no episodes of decompensation. Therefore, he determined that Plaintiff's mental impairment was not severe.

The regulations require that "[t]he decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(4). As support for his finding that Plaintiff's limitations were only mild in the first three categories, the Administrative Law Judge cited to isolated portions of Plaintiff's written function report. Thus, as to activities of daily living, he referenced the portion of the report in which Plaintiff said that she had no difficulty with personal care and that she cared for pets; as to social functioning, he referenced the portion of the report in which Plaintiff said that she was able to shop in stores and that she went outside a couple time a week; and as to concentration, persistence or pace, he referenced the portion of the report in which Plaintiff said that she was able to complete household chores, such as the

laundry and putting dishes into the dishwasher. [AR 16] None of this by itself can stand as substantial evidence.

The Administrative Law Judge selected those portions of the function report that appeared to suit his conclusion, but he did not reference others. Under "Information About Daily Activities," for example, Plaintiff stated, in response to the directive to describe what she did from the time she awoke to the time she went to bed, that she "lay [sic] on couch, sleep, cry." [AR 188] She also stated that she did not care for anyone else, that previously she could do anything and that her mother and husband helped her in the care of other people or animals. As for social functioning, Plaintiff did say that she shopped in stores, but, in response to the question "how often," she appeared to say once a month [AR 191], and, when asked directly whether she spent time with others, she said "no;" in terms of places she visited, she listed the doctor and the post office, but only when needed. [AR 192] As for concentration, persistence and pace, it is hard to see how doing laundry and putting dishes into a washer are activities that demonstrate these traits in a way that could be generalized to the workplace but, even if so, there were directly contrary statements in this same report: Plaintiff said that she needed reminders to do things [AR 190], and that she could not pay bills, handle a savings account or use a checkbook/money orders because she did not have the patience or concentration to do so. [AR 191]

It is error for the Administrative Law Judge to misstate or ignore competent evidence in order to justify a conclusion. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). By the same token, the Court must evaluate both the evidence that supports and the evidence that detracts from the Administrative Law Judge's decision. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). One cannot read the function report in its entirety and come away with the conclusions that the Administrative Law Judge reached based on portions within that report.

If the function report had been the sole evidentiary matter referenced in the decision, therefore, the Court would be obligated to reverse and send the matter back for further adjudication as to Plaintiff's mental impairment. But the Administrative Law Judge

also had before him other evidence, including the reports of two examining physicians and one treating physician. The treating physician opined that Plaintiff could perform very little in the way of work-like functions [AR 445-46], while each of the examining physicians found that Plaintiff understated her capabilities and embellished her maladies [AR239, 243-44; AR 498]. The Administrative Law Judge referred to all three physicians, and preferred the opinions of the examining physicians over those of the treating physician. [AR 15-17]

The opinion of a treating physician usually is given greater weight than the opinion of other physicians. *Aukland v. Massanari*, 257 F.3d 1033, 1036 (9th Cir. 2001). However, in *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Court of Appeals described the interaction between an opinion from a consultant and an opinion from a treating physician:

> When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her own conclusions, the conclusions of the examining physician are not "substantial evidence."

495 F.3d at 632. The Court went on to contrast that situation with the situation where the examining physician made his own independent findings, in which case the findings can stand as substantial evidence. The Court then explained that "[i]ndependent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered . . . ." *Id.* (citations omitted).

Both the examining physicians here administered tests, and obtained results, that the treating physician did not see. Even though their examinations were separated by a period of two years, each examining physician also concluded that Plaintiff was either overstating her case or malingering. Each reached different diagnoses from the treating

physician, and each suggested that Plaintiff had the capability to function in the workplace, in some places directly contrary to what Plaintiff had said in her written function report. [AR 500] While the treating physician's opinion usually is owed deference, in this case the Administrative Law Judge acted within his authority in preferring the opinions of the consultants instead.

Those opinions, in turn, stand as substantial evidence supporting the finding of non-severity as to Plaintiff's mental condition. They do differ, of course, from Plaintiff's own statements as set forth in her written function report, but the Administrative Law Judge was not required to accept those statements in the face of the contrary medical evidence.

In accordance with the foregoing, the decision of the Commissioner is affirmed.

DATED: October 1, 2013

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE